PETER McCOURT, Plaintiff in error,

*vs.*

JAMES MYERS, WILLIAM KINSELY, and CHARLES STOUT, Defendants in error.

ERROR TO CIRCUIT COURT, WINNEBAGO COUNTY.

R. being indebted to M. by a note, some months after the date, made a chattel mortgage of his stock of goods to M., to secure the note, and placed the same on file in the clerk's office ; R. then offered to sell the goods to C. and told him that the mortgage was a sham, and went and took it from the files, and C. purchased and removed the goods ; afterwards R. returned the mortgage to the files, and notified M. of its existence. M. then commenced an action against C. to recover the value of the goods ; held that the goods passed to C. unaffected by the chattel mortgage ; and that M. could not recover in the suit for want of a delivery of the mortgage to him.

The placing by the mortgagor of a chattel mortgage on the files of the clerk, without any declaration or intimation to the clerk that it was placed there to remain, under his charge for the use and benefit of the mortgagees, or that the mortgagor regarded the filing as a delivery, or that he intended to part with the possession and control over it, and without any knowledge or acceptance by the mortgagees, does not constitute a good delivery of the mortgage ; and if the mortgagor afterwards remove the same from the files, and then make a sale of the same goods, while the mortgage is off the files, even though the purchaser knew that the mortgage had been on file, and removed by the mortgagor, such sale is good as against the mortgagees.

This was an action brought by the defendants in error against the plaintiff in error, for the value of a stock of goods, mortgaged to them by Michael T. Reardon ; and of the value of about $3,000. The facts of the case as proved are stated by the court in its opinion. After the plaintiffs had closed their testimony, the defendant below made a motion for a nonsuit on the following grounds: 1. That the mortgage was not on file at the time of the sale and delivery of the goods to defen-

dant. 2. That there was no proof that Reardon, the mortgagor, resided at the city of Oshkosh, when the mortgage was first filed, nor until the day of its refiling. 3. That there never had been any delivery, actual or constructive, of the mortgage to the plaintiffs, until after the sale and delivery of the goods to defendant. 4. That no consideration for the giving of the mortgage was shown. Which motion was denied by the court and exception taken.

The counsel for the defendant did then request the circuit judge to charge the jury that M. T. Reardon, the mortgagor, had a right to take the mortgage from the file at any time before the plaintiffs were cognizant of the mortgage, or had been written to upon the subject; and also requested the circuit judge, further, to charge the jury, that if they should find that the goods were purchased by defendant and delivered to him while the mortgage was off the file, the defendant was entitled to a verdict in his favor; and did also request the circuit judge to charge the jury that the subsequent ratification by the plaintiffs would make the mortgage good by relation, back only to the time of refiling the same; and did also request the circuit judge, further, to charge the jury that the said chattel mortgage being given by Reardon to plaintiffs without their knowledge or consent, the same was void until the plaintiffs the acquiesced in the same; and did also request the circuit judge, further, to charge the jury, that the mortgage being put on file by M. A. Edmonds, as attorney for Reardon, the taking the same off again from the file by the said Edmonds, as attorney for said Reardon, before plaintiffs had knowledge of said mortgage, or acquiesced therein, was lawful and that in consequence thereof, said mortgage was not valid as to any person who purchased any of said goods while the same was off from the file; and did also request the said circuit judge, further, to charge the jury that a chattel mortgage is not valid as to any persons not parties thereto, unless

actually upon file. All of which the judge refused to give, and the defendant excepted. And the circuit judge did declare and deliver his opinion to the jury, and did then instruct and charge them, that if they should find for the plaintiffs, they the plaintiffs were entitled to the sum of $674, with interest at seven per cent. from January 15th, 1858, to which said charge of the circuit judge, the counsel for the defendant did except; and the jury having retired and duly deliberated, returned and found a verdict for the plaintiffs, and assessed their damages at six hundred and ninety-nine dollars and fifty-three cents. The judgment was rendered upon the verdict and this writ of error was sued out.

*Bouck & Edmonds* for the plaintiff in error.

1. The execution of a chattel mortgage, and filing the same without the knowledge or authority of the mortgagee, is not valid. *Dale vs. Bodman, et al.,* 3 Me. 139; *Baird vs. Williams, et al.,* 19 Pick, 381.

2. Execution only is not sufficient—there must be a delivery—there can be no delivery without acceptance of grantee. The carrying of an instrument to an office to be recorded or filed, is not a delivery, nor evidence of grantee's acceptance. *Maynard vs. Maynard,* 10 Mass. 456; *Bullard vs. Hinkley,* 5 Greenleaf, 272; *Hedge vs. Drew,* 12 Pick. 141; *Jackson vs. McCrea,* 1 John Ca., 116; *Jackson vs. Phillips,* 12 John, 418; *Elsey vs. Metcalf,* 1 Denio 323; *Commercial Bank vs. Rickles,* 1 Hals. Ch. R. 430; *Wiggins vs. Lusk,* 12 Ill., 132; *Rice's Eq. R.,* 244; *Cooper vs Jackson,* 4 Wis., 550; *Hulich vs. Scovel,* 4 Gil., 159; *Herbert vs. Herbert,* Breese 278.

3. The presumption that a person will accept a deed because it is beneficial to him, is never carried so far as to consider him as having accepted it. *Hulich vs Scovel,* 4 Gil. 159.

4. Mortgagor had authority to withdraw mortgage before mortgagees were cognizant thereof, and had been written to

upon the subject. To constitute a binding contract there must be a promise on the one part, an acceptance on the other—a request on the one side, an assent on the other. Suppose the mortgage was bona fide; it was in effect only this—give me one year's extension—you can have the mortgage. Chitty on Contracts, 9.

5. A ratification of an unauthorized act cannot effect the intervening rights of third persons. *Sturtevant vs. Robinson*, 18 Pick, 180; *Beals vs. Allen*, 18 John., 363.

6. The acceptance of the mortgage afterwards by the defendants in error only relates back to the re-filing. The doctrine of relation back *ab initio*, equitable in itself between the parties, is not to be construed to overreach the rights that have accrued to others before consent and ratification. *Baird vs. Williams*, 19 Pick, 381.

7. It was the duty of the city clerk to keep the mortgage on file, until removed by an authorized person. It is to be presumed that a public officer does his duty. The mortgage being removed by his consent, plaintiff in error was authorized to presume that it was lawfully removed. 1 Green, Ev. Sec. 80. *Hartnell vs. Root*, 10 *John*, 345; *Rex vs. Hawkins*, 10 East., 211.

8. A chattel mortgage is not valid as to any persons but the parties thereto, (unaccompanied with delivery of property,) unless actually upon file, even if the third person has knowledge thereof. *Travis vs. Bishop*, 13 Met., 304; *Denny vs. Lincoln*, id. 200.

*Edwin Wheeler & A. P. Hodges* for the defendants in error.

The testimony of the plaintiff in error, shows that he knew before the purchase of the goods, that they were mortgaged to the defendants in error, and that Reardon told him that he had placed such mortgage on file. It further shows that the plaintiff in error was cognizant of the insol-

vency of Reardon, because R. told him that he had placed the mortgages on file to keep his creditors off.

It also appears that he, McCourt, was present in the clerk's office at the time that Reardon and his attorney took the chattel mortgage off the file.

2. The delivery of the mortgage to the city clerk to be filed was equivalent to a delivery to the mortgagees, and if subsequently accepted by them within a reasonable time, the acceptance renders the mortgage valid from the time of the filing of the same. *Rathbun vs. Rathbun,* 6 Bar. 98; *Elsey vs. Metcalf,* 1 Denio, 323; *Cooper vs. Jackson,* 4 Wis., 537; *Merrills vs. Swift,* 18 Conn., 257; *Church vs. Gilman,* 15 Wend., 656.

Actual knowledge by the plaintiff in error of the existence of the mortgage before his purchase of the mortgaged goods, was equivalent to the filing of the mortgage. *Newman vs. Chapman,* 2 Rand., 93; *Fawke vs. Woodward,* Spear's Ch. 232; *Harper vs. Reno,* 1st Freem. Ch., 323; *Singer vs. Eastman,* 19 Wend., 514; *Gregory vs. Thomas,* 20 id., 17.

The removal of the mortgage from the files in the city clerk's office by the mortgagor or his attorney was fraudulent and that the plaintiff in error was a party to and cognizant of the fraud, and that he cannot derive any benefit from the fraud.

3. The commencement of this action was evidence of an acceptance by the defendants in error of the mortgage, and that such acceptance was made by them within a reasonable time after notice of the execution of the mortgage.

4. The sale by Reardon to McCourt was void, because made to defraud creditors, and vested no title in him. Rev. Stat., 615.

*By the Court,* COLE, J. This is a contest between the vendee and mortgagees of personal property. It is very

manifest that the defendants in error, in order to recover in the action in the court below, should establish the validity of the chattel mortgage given them by Reardon, so as to defeat the sale made by him to the plaintiff in error.  The material facts relating to the giving of the mortgage and the sale of the goods to McCourt, may be briefly stated as follows :

M. T. Reardon, of Oshkosh, being indebted to the defendants in error, who were merchants, doing business in the city of New York, in the sum of six hundred and seventy-four dollars, upon a promissory note, which he had given them for goods bought, of his own accord made a chattel mortgage running to them, of all the goods and merchandize in his store, and of every part thereof.  The note bears date some time in September, 1857, and was payable six months from date, and the mortgage to secure the payment of the note was dated on the 13th day of January thereafter.  The mortgage was made without the request or any understanding previously had with the defendants in error, and even without their knowledge, until after the sale to McCourt.  The circumstances attending the giving of the mortgage are detailed by the witness Edmonds, who testified that, at the request of Reardon, he drew the mortgage, placed it on file in the office of the clerk of the city of Oshkosh, on the date it was made, subsequently took the mortgage from the office at 9 A. M., of the 15th of January, and again placed it upon file at noon of that day, and that all the time he acted on behalf of Reardon, and as his agent and attorney.  McCourt, who was sworn as a witness for the defendants in error, gives the facts and history of the purchase made by him, and says :  " I purchased a part of Reardon's stock of goods which he had in his store on the 15th day of January, 1858, and paid him two thousand and twenty-five dollars for what I purchased.  I bought them at 15 per. cent less than Reardon's N. Y. cost, but at just about what I could buy them for myself in N. Y.  Before

I had completed my purchase, I went to the city clerk's office and found four or five mortgages on file, including mortgage to the plaintiffs. Went immediately to Reardon and told him I would not complete any purchase, because there were mortgages on file against the goods. Reardon said to me that the mortgages amounted to nothing, were a mere sham, placed on file to keep his creditors off, and he would have them removed in five minutes. I went back to the clerk's office soon afterwards, and found that they were not on file. Reardon and Edmonds were in the clerk's office when I went back there, and one of them or the clerk told me that they had just taken the chattel mortgages from the files. I found no mortgage on file at this time,. covering the goods. This was after 9 o'clock in the forenoon of January 15th, 1858. I then went and completed the purchase, paid for the goods and took them to my store before noon of that day," &c.

At what time the defendants in error were informed of the giving of the chattel mortgage, and concluded to accept it as security for the payment of the note, does not very clearly appear from the testimony in the case; but it is quite evident that it was some time subsequent to the sale to McCourt. Now the main question presented to the consideration of the circuit court upon the motion for a non-suit, and upon the instructions asked for and refused, and which we are called to pass upon, is, whether there was such a delivery of the chattel mortgage, actual or constructive, as to render it valid, and so as to make it operative to intercept and defeat the title to McCourt. Upon this point a great number of cases have been cited, to show what in law has been held to be a good delivery of a deed, but we do not deem it necessary further to refer to these authorities than to state that the principal upon which the case must rest, will be found in harmony with the doctrine of them all.

The proposition that a delivery of this mortgage was essen-

tial to its validity was not controverted upon the argument by the counsel for the parties claiming under it; but it was insisted that the testimony satisfactorily showed that there had been a good and sufficient delivery of the mortgage to a third person for the use of those for whom it was made. The evidence upon this point has already been cited, and we think it fails to show any delivery of this mortgage before the sale of the goods to McCourt.

The proof in the case very clearly and conclusively shows that the mortgage was made by Reardon upon his own motion, without any arrangement or understanding with, or knowledge by the mortgagees, that it should be made or was to be given; and Reardon's attorney, acting for him, placed it on file in the office of the clerk of the city of Oshkosh. This is all that was done in the premises. There was no declaration or intimation to the clerk, either made by the principal or agent, that the mortgage was placed upon file to remain there under his charge for the use and benefit of the mortgagees —nothing going to show that Reardon regarded the filing of the mortgage as a delivery to the mortgagees, and that by that act he intended to part with the possession, and all power and control over the instrument—nothing in the transaction up to this time to show that the mortgagees would have been willing to accept an absolute delivery of the mortgage by Reardon. It is said that the law will presume that a man will accept what will be for his benefit, and that there is the strongest ground here for presuming that the defendants in error would have at once accepted the mortgage as soon as tendered, because they now seek to claim title under it. Could we see evidence in the case sufficient to authorize the conclusion that Reardon, by placing the mortgage on file, intended to part with all control and power over it, we should have but little difficulty. It would then come within the doctrine of the case of *Cooper vs. Jackson*, 4 Wisconsin, 537, and of

the authorities cited on the briefs of counsel. But the declarations and acts of Reardon are entirely inconsistent with the idea that he supposed in placing the mortgage on file he had parted with all control over it, and that it was absolutely and fully in possession of the clerk for the use of the mortgagees. He states to McCourt that the mortgages on file amounted to nothing, and were mere shams, placed on file to keep off his creditors, and that he would have them removed in five minutes. He actually went and took the mortgage from the file. He assumed the right to control it, and did in fact take it into his possession at his pleasure. It does not appear that he practiced any fraud upon the clerk to obtain possession of the mortgage, but that he took it because it was subject to his control. Not having made an absolute and unconditional delivery of this mortgage to the clerk or any one else, for the benefit of the defendants in error, at the time of the sale of the goods to McCourt, we think the title passed unaffected by the mortgage. Reardon's motive for placing this mortgage on file for the purpose of frightening and deceiving his creditors as to the real condition of his affairs, was undoubtedly very improper and reprehensible. Such conduct cannot be approved. But we do not see how this fraudulent motive of his can affect the validity of this mortgage, and the question as to whether there was ever a delivery or not.

It appears to us that the circuit court erred in not granting the non-suit, upon the ground that the evidence showed there had been no delivery of the mortgage by Reardon to the the mortgagees, or to any third person for their use and benefit, before the sale of the goods to McCourt.

We do not perceive any circumstance in the case which would authorize us in declaring the sale from Reardon to McCourt void because made to defraud creditors.

It follows from these views that the judgment of the circuit court must be reversed and a new trial ordered.